**Mark Bradford (MB 6002)**
**MARK BRADFORD, PC**
**299 12th Street**
**Brooklyn, New York 11215-4903**
**Tel: (347) 413-3287**
**mb@markbradfordpc.com**

**Cara R. Burns (CB 1071) (PHV to be requested)**
**MIMS, KAPLAN, BURNS & GARRETSON**
**28202 Cabot Road, Ste 300**
**Laguna Niguel, California 92677**
**Tel: (310) 314-1721**
**Fax: (949) 340-9737**
**cburns@hmkblawyers.com**

**Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | |
|---|---|
| **MERCH TRAFFIC, LLC,**<br><br>**Plaintiff,**<br>**v.**<br><br>**JOHN DOES 1-100, JANE DOES 1-100 AND XYZ COMPANY,**<br><br>**Defendants.** | **CIVIL ACTION NO. 1:26-cv-7060 JPC**<br><br>**CERTIFICATE OF COUNSEL OF CARA R. BURNS IN SUPPORT OF EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION AND SEIZURE ORDER SHOULD NOT ISSUE; AND REGARDING LOCAL RULE 7.1(C) AND JUDGE'S INDIVIDUAL RULES AND PRACTICES** |

---------------------------------------------------------------x

I, CARA R. BURNS, hereby certify and affirm as follows:

1. I have personal knowledge of the facts set forth herein and if called as a witness, I would be able to testify competently to such facts. I make this certificate in support of Plaintiff, Merch Traffic, LLC's ("Plaintiff") ex parte application for: a temporary restraining order; seizure

order; and an order to show cause regarding why a preliminary injunction and seizure order should not issue, to enjoin the sale of infringing merchandise bearing the trademarks, service marks, likenesses, logos and/or other indicia of the Artist **"HARRY STYLES"** (collectively, the "Artist's Trademarks") and to seize the same, during his concerts at Madison Square Garden that begin on August 26, 2026 and end on October 31, 2026 (the "Residency Concerts"). See Declaration of Emily Holt ("Holt Declaration") and Exhibit A thereto. This District has previously granted nationwide seizure orders for performers, for this Artist's prior 2 tours, as well as one for his former group known as "ONE DIRECTION". See ¶ 6 *infra,* including Merch Traffic, LLC. v. Does, Case No. 22-cv-6839 AT (S.D. NY 2022) (Judge Torres) (for Harry Styles' tour), Merch Traffic, LLC. v. Does, Case No. 21-cv-8283 AT (S.D. NY 2021) (Judge Torres) (for Harry Styles' tour), and for his prior group "ONE DIRECTION" F.E.A., Inc. v. Does, Case No 12-CV-3999 TPG (S.D. NY 2012) (Judge Griesa) (for One Directions' tour), and from this Court Tsurt v. Does, Case No. 1:24-cv-6616 JPC (S.D. NY 2024) (Judge Cronan) (for Pearl Jam's tour). Notably, those actions sought infringing merchandise seizure orders for performers' tours at multiple venues throughout the United States, whereas here, Plaintiff seeks seizure orders to be used in connection with the Artist's Residency Concerts, all of which will occur at Madison Square Garden.

2. Pursuant to Local Rule 7.1(c) and the Judge's Individual Rules and Practices in Civil Cases, No. 2.B., I certify that the accompanying memorandum has a word count of 4576 words, exclusive of captions, table of contents and table of authorities, and signature block, and therefore complies with the word-count limitations.

3. Rule 65(b)(2) of the Federal Rules of Civil Procedure requires that for the Court to grant such an order without notice, "the applicant's attorney [must certify] to the court . . . the

reasons supporting [her] claim that notice should not be required." Matter of Vuitton et Fils S.A., 606 F.2d 1, 3 (2d Cir. 1979). See also Local Rule 6.1 (d).

4. I am a member of the firm of Mims, Kaplan, Burns & Garretson, attorneys for Plaintiff in the above captioned action and will be requesting admission pro hac vice in this matter. I am admitted to practice in the state of California and before the United States District Courts for the Central, Southern, Eastern and Northern Districts of California, the United States District Court for the Southern District of Texas, the United States District Court for the District of Colorado, the United States District Court for the Eastern District of Michigan, and the United States of Court of Appeals for the Ninth Circuit. I have represented Plaintiff on a nationwide basis, against the unlawful activities by Bootleggers that violate my client's contractual and legal rights. I have concentrated a substantial portion of my practice in anti-counterfeiting, copyright infringement, branding, and privacy matters for clients such as the Plaintiff and its predecessors (Live Nation Merchandising, Inc. [hereinafter "Live Nation"] and F.E.A., Inc), and other performer related merchandisers, as well as for technology, luxury goods and other intellectual property holders such as well-known individual artists, and companies such as Motorola, Nokia, Warner Bros. Mattel, Novell, the United States Olympic Committee, and the Software Publishers' Association. I have taught intellectual property and entertainment law at USC Annenberg School of Communications (graduate school) and lectured on these subjects at universities and for continuing education (including the Practicing Law Institute). Articles regarding my representation of intellectual property rights holders have appeared in the Wall Street Journal, Law360; Billboard, and the Boston Globe. I have filed numerous ex parte temporary restraining and seizure orders, some of which are set forth in paragraph 6 herein.

5. As set forth more fully in the Declaration and the complaint, both filed concurrently herewith, Plaintiff has the exclusive right to sell "Authorized Merchandise" namely merchandise bearing the Artist's Trademarks –the trademarks, service marks, likenesses, logos, and other indicia of the Artist. This Artist and other performers of his stature have recurring problems with individuals who sell infringing merchandise near, at and sometime inside a concert venue. These individuals are commonly referred to as "Bootleggers," their activities are known as "Bootlegging" and their merchandise is referred to as "Bootleg Merchandise" or "Infringing Merchandise." This application/motion is filed to enjoin these activities and seize the Infringing Merchandise.

6. Plaintiff and other merchandisers have obtained temporary restraining orders and seizure orders and thereon preliminary injunctions and seizure orders from this and other District Courts to combat the piratical activities of Bootleggers for other performers. I have personally obtained these orders, except where noted. Further to note, this application/motion is made for seizure orders that, if granted, will be operative in New York City for the Artist's Residency Concerts only.

**From this District and Other Districts for this Performer or His Prior Group:** Merch Traffic, LLC. v. Does, Case No. 22-cv-6839 AT (S.D. NY 2022) (Judge Torres) (for Harry Styles' tour), Merch Traffic, LLC. v. Does, Case No. 21-cv-8283 AT (S.D. NY 2021) (Judge Torres) (for Harry Styles' tour); F.E.A., Inc. v. Does, Case No 12-CV-3999 TPG (S.D. NY 2012) (Judge Griesa) (for One Directions' tour); Live Nation v. Does, Case No. 3:17-cv-1275 (M.D. TN 2017) (Judge Trauger) (for Harry Styles' tour); F.E.A. Inc. v. Does, Case No. 15-cv- 1438 CAB (S.D. CA 2015) (Judge Bencivengo) (for One Direction's tour); and F.E.A. Inc. v. Does, Case No. 14-cv-13160 RWZ (S.D. CA 2014 (Judge Zobel) (for One Direction's tour). A true and correct copy

of some of the Temporary Restraining Orders and Seizure Orders, and thereafter Nationwide Preliminary Injunction and Seizure Orders are attached hereto as Exhibit A.

**From this District for Other Performers:** Tsurt v. Does, Case No. 1:24-cv-6616 JPC (S.D. NY 2024) (Judge Cronan) (for Pearl Jam's tour) (obtained by other counsel); Ceremony of Roses Acquisition LLC v. Does, Case No. 1:26-cv-3382 JHR (S.D. NY 2026) (Judge Rearden) (for Bring Me The Horizon's tour); Ceremony of Roses Acquisition LLC v. Does, Case No. 1:25-cv-7512 KPF (S.D. NY 2025) (Judge Polk Failla) (for Dua Lipa's tour); Ceremony of Roses Acquisition LLC v. Does, Case No. 1:25-cv-7151 AT (S.D. NY 2025) (Judge Torres) (for Benson Boone's tour); Bravado v. Does, Case No. 1:24-cv-06517 PAE (S.D. NY 2024) (Judge Engelmayer) (for Nicki Minaj's tour); Merch Traffic. v. Does, Case No. 1:23-cv-6794 LLS (S.D. NY 2023) (Judge Stanton) (for Jonas Brothers' tour); Merch Traffic, LLC v. Does, Case No. 1:25-cv-7045 VSB (S.D. NY 2025) (Judge Broderick) (for Tate McRae's tour); Merch Traffic. v. Does, Case No. 1:23-cv-3947 DLC (S.D. NY 2023) (Judge Cote) (for BLINK-182's tour); Merch Traffic v. Does, Case No. 23-cv-6021 LGS (S.D.NY 2023) (Judge Schofield) (for Drake's 2023 tour); Merch Traffic. v. Does, Case No. 23-cv-2459 RA (S.D. NY 2023) (Judge Abrams) (for Bruce Springsteen & the E Street Band's tour); LNM v. Does, Case No. 18-cv-7551 LAP (S.D. NY 2018) (Judge Preska) (for Drake's tour); LNM v. Does, Case No 16-cv-0336 (S.D.NY 2016) (Judge Kaplan) (for Bruce Springsteen & the E Street Band's tour); F.E.A., Inc. v. Does, Case No 12-CV-3999 TPG (S.D. NY 2012) (Judge Griesa) (for One Direction's tour); F.E.A., Inc. v. Does, Case No 12-CV-1313 PGG (S.D. NY 2012) (Judge Gardephe) (for Van Halen's tour); and Bravado v. Does, Case No. 11-cv- 6262 JFK (S.D. NY 2011) (Judge Keenan) (Metallica Festival - cite order only sought). A true and correct copy of some of the Temporary Restraining Orders and Seizure

Orders, and thereafter Nationwide Preliminary Injunction and Seizure Orders are attached hereto as Exhibit B.

**From Other District Courts in New York:** Live Nation v. Does, Case No. 18-cv-3468 (E.D. NY 2018) (Judge Feuerstein) (for Lynyrd Skynyrd's tour); Manhead, LLC v. Does, Case No. 18-CV-3999 (E.D. NY 2018) (Judge Bianco) (for Panic! At the Disco's tour); Live Nation v. Does, Case No. 1:18-cv-580 LEK (N.D. NY 2018) (Judge Kahn) (for Def Leppard's tour); Live Nation v. Does, Case No. 2:17-cv-1987 (E.D. NY 2017) (Judge Feuerstein) (for Def Leppard's tour); Signatures Network, Inc. v. Does, Case No. CV-08-1181 (E.D.NY 2008) (Judge Platt) (for Mary J. Blige's tour); and Signatures Network, Inc. v. Does, Case No. CV 03-3725 (E.D. NY 2003) (Judge Spatt) (for Kiss' tour). A true and correct copy of some of the Nationwide Preliminary Injunction and Seizure Orders are attached hereto as Exhibit C.

**From Other District Courts for Other Performers:** (Sampling of more current orders, many Judges issues more than one tour seizure order): Bravado v. Does, Case No. 26-cv-07017 (S.D. TX 2026) (Judge Lake) (for A$AP Rocky's tour); Bravado v. Does, Case No. 2:26-cv-3738 (D. NJ 2026) (Judge Padin) (for Bruce Springsteen and the E Street Band's tour); Ceremony of Roses v. Does, Case No. 5:26-cv-1704 XR (W.D. TX 2026) (Judge Rodriguez) (for Zach Bryan's tour); Bravado v. Does, Case No. 1:25-cv-14333 (N.D. IL 2025) (Judge Kness) (for MGK's tour); End to End System v. Does, Case No. 3:25-cv-1164 (M.D. TN 2025) (Judge Richardson) (for Youngboy Never Broke Again's tour); Bravado v. Does, Case No. 2:25-cv-6020 (D. NJ 2025) (Judge Cox Arleo) (for the Weeknd's tour); Ceremony of Roses v. Does, Case No. 25-cv-00350 (D. CO 2025) (Judge Gallagher) (for Tyler, the Creator's tour); Bravado v. Does, Case No. 4:25-cv-2738 (S.D. TX 2025) (Judge Lake) (for Morgan Wallen's tour); Bravado & Ceremony of Roses et. al. v. Does, Case No. 25-cv-1766 (S.D. TX 2025) (Judge Eskridge) (for SZA's and Kendrick

Lamar's tour); Merch Traffic v. Does, Case No. 2:25-cv-13960 KSH (D. NJ 2025) (Judge Hayden) for the Jonas Brothers' tour); Bravado v. Does. Does, Case No. 4:25-cv-1537 (E.D. MO 2025) (Judge Pitlyk) (for Playboi Carti's tour); Bravado v. Does, Case No. 1:24-cv-1078 FJS (N.D. NY 2024) (Judge Scullin) (for Post Malone's tour); Merch Traffic v. Does, Case No. 1:24-cv-6122 (E.D. NY 2024) (Judge Merchant) (for Usher's tour); Bravado v. Does, Case No. 1:24-cv-1716 (D. CO 2024) (Judge Rodriguez) (for Blink-182's tour); Bravado v. Does, Case No. 3:24-cv-306 (M.D. TN 2024) (Judge Richardson) (for Nicki Minaj's tour); Merch Traffic v. Does, Case No. 1:24-cv-6722 (N.D. IL 2024) (Judge Alonso) (for Metallica's tour); Bravado v. Does, Case No. 2:24-cv-09555 (D. NJ 2024) (Judge Cecchi) (for Billie Eilish's tour); Bravado v. Does, Case No. H-24-cv-585 (S.D. TX 2024) (Judge Rosenthal) (for the Olivia Rodrigo's tour); Bravado v. Does, Case No. 4:24-cv-01457 (S.D. TX 2024) (Judge Lake) (for the Rolling Stones' tour); Merch Traffic v. Does, 4:23-cv-3065 (S.D. TX 2023) (Judge Hanen) (for RBD's tour); Bravado v. Does, Case No. 23-cv-12331 (D. MA 2023) (Judge Zobel) (for Aerosmith's tour); Merch Traffic v. Does, Case No. 23-cv-638 (M.D. TN 2023) (Judge Campbell Jr.) (for Peso Pluma's tour); Bravado v. Does, Case No. 22-cv-01632 ES (D. NJ 2022) (Judge Salas) (for Justin Bieber's tour); Bravado v. Does, Case No. 22-CV-00124 (S.D. TX 2022) (Judge Bennett) (for Elton John's tour); Live Nation v. Does, Case No. 19-cv-3762 SJC (N. D. IL 2019) (Judge Coleman) (for Dead & Company's tour); Live Nation v. Does, Case No. 1:19-cv-1580 RM (D. CO 2019) (Judge Moore) (for New Kids on the Block's tour); Bravado v. Does, Case No. 19-cv-3960RC (N.D. IL 2019) (Judge Castillo) (for the Rolling Stones' tour); Bravado v. Does, Case No. 3:19-cv-00211 JLS (S.D. CA 2019) (Judge Sammartino) (for Kiss' 2019 tour); Epic Rights, LLC v. Does, Case No. 19-CV-3262 (S.D. TX 2019) (Judge Gilmore) (for Mana's tour); Live Nation v. Does, Case No. 19-CV-4106 (S.D. TX 2019) (Judge Hughes) (for the Tools' tour); Live Nation Merchandise, Inc.

v. Does, Case No. 4:18-cv-660 RLW (E.D. MO 2018) (Judge White) (for U2's tour); Tsurt v. Does, Case No. 2:18-cv-1119 JLR (W.D.WA 2018) (Judge Robart) (for Pearl Jam's tour); Live Nation v. Does, Case No. 18-CV-1868 (S.D. TX 2018) (Judge Gilmore) (for the Eagles' tour); Manhead, LLC v. Does, Case No. 18-CV-2103 (S.D. TX 2018) (Judge Hittner) (for Weezer's tour); Bravado v. Does, Case No. 17-CV-0005 (S.D. TX 2017) (Judge Harmon) (for Red Hot Chili Peppers' tour); Live Nation v. Does, Case No. 17-cv- 718 (M.D. TN 2017) (Judge Trauger) (for Tom Petty and the Heartbreakers' tour); Tsurt, LLC v. Does, Case No.3:16-cv-1816 CAB (S.D. CA 2016) (Judge Bencivengo) (for Blink -182's tour); Araca Merchandise L.P. v. Does, Case No. 16-cv-1194 (S.D. TX 2016) (Judge Miller) (for Beyoncé's tour); Live Nation v. Does, Case No. 16-cv-0563 JRB (N.D. IL 2016) (Judge Blakey) (for Black Sabbath's tour); Tsurt, LLC. v. Does, Case No. 16 CV 60647 RNS (S.D. FL 2016) (Judge Scota) (for Pearl Jam's tour); and Bravado v. Does, Case No. 15-cv-1097 BAS (S.D. CA 2015) (Judge Bashant) (for the Rolling Stones' tour). True and correct copies of some of the temporary restraining orders and seizure orders and thereafter nationwide preliminary injunctions and seizure orders issued are attached hereto as Exhibit D.

7. Although many people were served and thousands of items of Bootleg Merchandise were seized, defendant bootleggers do not appear. Nearly all were filed against Does only, and defendant Does appeared on the tour and sold their Infringing Merchandise, as demonstrated by the prior orders granted in this District and other Districts.

8. Based upon my knowledge of prior similar actions, I believe that it is far more likely than not that the Defendants will use every effort to transfer, hide or destroy the Bootleg Merchandise if such merchandise is not subject immediately to an ex parte seizure order. From my familiarity with such trademark and unfair competition actions, my observation is that hiding

or destroying evidence and business records is usually the first action taken by a Bootlegger after he/she learns that litigation has been commenced by a trademark or similar property owner.

9. As set forth more detail in the Declaration, the Artist is prominent and successful. The Artist's audience spans a large portion of the total concert going public, his career is firmly established and he enjoys a large audience following. The Artist's Trademarks are well known and have acquired secondary meaning.

10. The Bootleggers' pattern, including for the Artist's prior tours, is for the same or similar infringing merchandise, which bears the trademarks of the performers, including their names and the logos of the tour. In a typical situation, prior to a concert, the Bootleggers appear, offering for sale their infringing, inferior merchandise, particularly T-shirts, bearing the trademarks (including names and likenesses) of the performer appearing at the concert. This illegal merchandise seriously impairs sales of authentic merchandise within the concert venues, particularly because most of the Infringing Merchandise is offered for sale prior to the concert. Thus, each infringing sale represents a lost sale and good will to the Plaintiff and the Artist.

11. The persistence and severity of the bootlegging activities experienced by such performers attests to the economic importance of tour merchandising rights in connection with performers enjoying the prominence of this Artist. Absent the relief requested, the loss of merchandising income at a single venue is substantial. Equally relevant to this application for ex-parte relief, and as more fully demonstrated in the accompanying brief, the injury to the goodwill of Plaintiff/s and the Artist, through distribution of inferior merchandise (which would inevitably be associated with them), is clearly irreparable.

12. The cases cited involved concert tours of prominent musical performers in which a plaintiff's applications for restraining and seizure orders were sought to prevent bootlegging. In

each instance in which service of process was made upon the defendant bootleggers, and preliminary injunctions were issued to prohibit continued bootlegging by all defendants including those served with process and all persons acting in concert with them. Notably, nearly all the ones above were for performers' tours at various concerts throughout the United States. Here, Plaintiff seeks the temporary restraining and seizure order, and thereafter the preliminary injunction and seizure order for the Artist's Residency Concerts that will take place in this District.

13. As noted above, this action is commenced against Doe defendants because those Defendant Bootleggers cannot be positively identified until the night of the concert (when they are actually served). Generally, individual Defendant Bootleggers are well aware of the illegal nature of his or her activities. They conceal their presence and their intentions until immediately prior to the show. Even when served, they frequently either refuse to identify themselves or provide fictitious names and addresses.

14. These Doe defendants do exist and they are specific people – they are the ones that appear at the concerts, sell their spurious goods and then disappear. I have personally witnessed this at numerous concerts, including on September 3, 2025 at a concert for Tate McRae at Madison Square Garden in New York, New York (and note seizure orders were sought and granted from this District). When I tried to photograph Bootleggers and their infringing merchandise, they became suspicious, so I used the pretext that it was for my niece who could not attend the concert, but I wanted to see if she would like it, then buy it. Some still refused and would not let me photograph them. Other times, when I identify myself as an attorney and asked for them to stop selling infringing merchandise and for their contact information, Defendant Bootleggers refused. They either walked away, shouted an expletive or said words to the effect of " you don't have an order". In context, I believe they mean a seizure order like the one Plaintiff seeks from this Court

by this application, because the defendant bootleggers know about these orders and that what they were doing was unlawful.

15. Over the years, a nominal number of defendant bootleggers have contacted me and although they refuse to give me their information, they ask if the performer will show up at the hearing (which they do not) or if they can send to me designs for the performer to review.

16. I believe that Defendant Bootleggers do not appear in an action because only infringing merchandise is seized and they have no legitimate rights. Because Defendants do not pay any licensing fees, do not pay taxes, and print their infringing merchandise on "seconds" and "irregular" shirts (and other clothing) that are sold at a nominal cost, the bond set in these matters averages about $5,000.

17. Clearly, there is no way of providing formal notice of this action to the defendants. Because Plaintiff holds the exclusive rights to use the Artist's trademarks, service marks, likenesses, logos and other indicia in connection with Tour Merchandise, there is no possibility that issuance of the order sought herein could interfere with or impose a detriment to any legitimate interest of any person.

18. Procedurally, if the proposed order is granted, Plaintiff, at the order to show cause hearing, would provide the Court with a declaration regarding service of the order, identifying bootlegging defendants by description and/or photograph and by name if provided, and examples of seized Infringing Merchandise. Plaintiff will present a preliminary injunction and further seizure order.

19. All Infringing Merchandise seized pursuant to the proposed order Plaintiff requests the Court to issue will be held first by Plaintiff's tour managers as the substitute custodian until

after the completion of the concerts, at which time the Court can direct the destruction or other disposition of such merchandise.

20. Plaintiff is prepared to proceed with a hearing immediately after the execution of the ex parte order being sought, or at such later time as is convenient to the Defendants and to the Court. Accordingly, the ex parte entry of this order, when balanced against the great hardships to the Plaintiff if the evidence is lost or destroyed, is justified.

21. The two main decisions that address the issues in this matter are *SKS Merch, LLC v. Barry*, 233 F. Supp. 2d 841 (D. KY 2002) and *Plant v. Does*, 19 F. Supp. 2d 1316 (S.D. FL 1998). In part because of the reasons in *SKS Merch, LLC v. Barry*, and in part because of my personal knowledge based on participating in filing for numerous similar seizure orders, including obtaining other similar seizure orders for this Artist and other performers, I believe the issues raised by Plant and those that follow that decision have been addressed in our application or by the Court in *SKS Merch*. As demonstrated in numerous other matters for similarly successful performers, Defendant Bootleggers appear during a major performers' tour. See Holt Declaration. Bootleggers refuse to identify themselves, in part because they know their activities are illegal. I also note that the court in Plant was unhappy that counsel filed his matter a day before the concert which "creat[ed] an artificial air of emergency" and it should have filed it as a regular motion. Counsel in that matter may not have been able to underscore for the Court that the Lanham Act contemplates that these matters are to be brought on by an ex parte application (i.e. not a formal motion) basis. I believe based on my extensive history in these types of matters that we are following what is required by the Trademark Act by bringing this as an ex parte application (and not as a noticed motion) a few days prior to the concert. Moreover, if we were to wait for a noticed motion to be heard, or even wait for a few more concerts, including to obtain "information" about

the defendants (which again, as is also discussed in the Holt Declaration, they will not provide names or any other proper information), Plaintiff would have to file weeks from now. Such a prolonged wait would further irreparably harm Plaintiff and cause a loss of a great deal of good will and revenue, while the Defendant Bootleggers would continue to infringe the Artist's /Plaintiff's rights. In Plant and others, the courts believed that filing before a concert was premature or that Defendants would not appear, but again here Defendant Bootleggers have appeared during each of the Artist's prior United States tours, and this District granted seizure orders for those tours. See also Holt Declaration. In addition, without an order issued prior to the concerts, there would be absolutely no viable remedy. Indeed, the Defendant Bootleggers' actions in their stealth bootlegging activities is one of the main reasons Section 1116(d) (including its ex parte application procedure) was enacted.

22. The seizure order sought is the only way to afford this specific Plaintiff complete relief against the actions of Defendant Bootleggers during the Artist's tour. Defendant Bootleggers' have no viable defense to their use of the Artist's Trademarks in their Infringing Merchandise. Plaintiff applies to seize the Infringing Merchandise to preserve the most important piece of evidence and stop further harm to the consumer and the Plaintiff. Without the seizure orders Plaintiff respectfully requests, the only people who will gain, and gain momentum, are the Defendant Bootleggers, to the detriment of consumers and the Plaintiff.

23. It is clear that without the relief sought herein, the Plaintiff, the legitimate merchandisers for the Artist. is helpless to prevent this thriving illegal industry from preying upon unwitting fans who are interested in obtaining concert souvenirs. The Defendant Bootleggers will sell Infringing Merchandise at the concerts unless the requested orders are issued. It is highly doubtful that proper information would be obtained about the Defendant Bootleggers at the

concerts, or that they would adhere to any issued restraining order. Again, I stress that these Doe Defendants are real people who appear at prominent performers' concerts. In addition, the pleadings filed herein are indeed similar to pleadings filed in other matters because the actions of the Defendant Bootleggers are the same – they appear and sell unauthorized merchandise at concerts, they fail to provide identification, and they fail to voluntarily stop. There is no need to "reinvent the wheel."

24. Plaintiff has followed the procedures of the Anti-Counterfeiting Act and has notified the United States Attorney for this District by letter of its intention to bring this action, and of the nature of this action. The United States Attorney has not responded to this letter.

I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct. Dated: August 18, 2026.



CARA R. BURNS